HOLMES, BOOTH & HAYDENS *v.* OSBORN & CHEESMAN CO.

(*Circuit Court, D. Connecticut.* December 11, 1880.)

1. PATENT No. 209,701—BUCKLES—VALIDITY—INFRINGEMENT.

Letters patent No. 209,701, granted November 5, 1878, to George W. McGill, for improved buckles, *held,* valid. Complainant's device, consisting of a fastening-plate hinged to the *cross-bar* of an ordinarily-constructed buckle, with its base terminating in a central single prong, and a prong pierced and extending from its body portion, both prongs being bent at right angles to such plate to enter the article to which the buckle is to be attached through slits cut therein on lines parallel with each other, and clamp such articles by being bent down on either side, *held, infringed* by a buckle containing a similarly-constructed plate hinged to *two-housed journals,* and *not infringed* by a buckle with its fastening-plate terminating in a single central prong, with two prongs pierced, and extending from its body portion not in the same longitudinal line.

In Equity.

*George E. Terry,* for plaintiff.

*Charles B. Tilden,* for defendant.

SHIPMAN, D. J. This is a bill in equity founded upon letters patent of the United States, dated November 5, 1878, and issued to George W. McGill, the assignor of the plaintiffs, for an "improvement in buckles." The invention is an improved shoe buckle, and is described by the patentee in his specification and claim as follows: "My invention has for its object an improved and simplified mode of fastening a buckle to a strap, or to such other article as it may be desired to attach it, and consists in hinging to the cross-bar of an ordinarily-constructed buckle, a metallic fastening consisting of a plate, having its base terminating in a central single prong, and having another prong pierced and extending from its body portion, both the base prong and body prong being pointed and bent down at right angles from the body of the plate in such manner that they will enter the article to which the buckle is to be attached through slits cut therein on lines parallel with each other, and clamp such articles by being bent down on its other side, either toward or from each other, as will hereinafter fully appear. What I do claim and desire to secure by letters patent is the herein-described buckle, having the fastening plate, B, constructed with the prong D from the internal position of the plate, and the prong C from the free end thereof, both being in the same longitudinal line, and substantially as specified."

The defendants made and sold, before the filing of the bill, and after the assignment of the patent to the plaintiffs, two kinds of buckles—one, Exhibit A, identically like the McGill buckle, except that the fastening plate was not hinged to a cross-bar extending across the buckle, but was hinged to two-housed journals. This is an immaterial difference, and is not claimed to be otherwise. The base of the fastening plate of the other kind of buckle (Exhibit B) terminates in a central single prong, but the plate has two prongs pierced and extending from its internal position or body. When these three prongs are bent forward, the end prong will lie upon the plate between the two internal prongs. They are not in the same longitudinal line with a reference to the sides of the

buckle, or of the fastening plate, but are in the same length-wise line of strain.

The proofs in the case were taken in the usual way. At the hearing, the counsel for the defendants was not present, but submitted the case on the proofs without filing a brief. My examination of the proofs leads me to the conclusion that neither the novelty nor the patentability of the McGill patent was successfully attacked. I did not examine the evidence in regard to the invention of Samuel C. Talcott, patented July 25, 1871, inasmuch as it was not named in the answer, and seasonable objection was made to the testimony.

The main point in the case is whether Exhibit B is an infringement. This question depends upon the construction which shall be given to the clause in the claim, which requires that both prongs shall be "in the same longitudinal line." The plaintiffs contend "that the term 'longitudinal line' means the line of strain, and nothing more or less, because the only known longitudinal line of a buckle is the line of strain." The defendants insist that the term means the line with reference to the fastening plate, or to the side bars of the buckle.

The shoe buckle which was in the most general use prior to the McGill invention was the one made under letters patent to Calvin Hersome, No. 157,395, dated December 1, 1874. Hersome's fastening plate is the same with McGill's, and has two prongs, but they are at the base of the plate, on the same transverse line, and are inclined towards each other, and are not bent at right angles from the bottom of the plate. McGill's invention consisted in making the two prongs to bend at right angles from the body of the plate, and to enter the strap through slits cut therein in lines parallel to each other.

Exhibit B is a slight departure from Exhibit A, but I am of the opinion that the patentee limited himself in his claim to prongs in the same longitudinal line as distinguished from the prongs of the Hersome patent, which are in the same transverse line, and that, either by inadvertence or inten-

tionally, he confined himself to prongs in the same longitudinal line with reference to the fastening plate. I give the words "longitudinal line" the meaning which appears to me to be the more obvious and material one.

I am, therefore, of the opinion that Exhibit B is not an infringement.

Let there be a decree for an injunction against the manufacture or sale of articles like Exhibit A, and for an accounting.